7/1/2021 2:44 PM
21CV26884

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MULTNOMAH

| | |
|---|---|
| **ALICIA LINTNER,** Personal Representative of the Estate of **DEBBIE LEE DALTON,** Deceased,<br><br>Plaintiff,<br><br>v.<br><br>**WALMART INC.** dba **WALMART #1784**, a Foreign Corporation,<br><br>Defendant. | Case No.<br><br>**COMPLAINT**<br><br>Personal Injury – Negligence – Premises Liability – Survival Action (ORS 30.075)<br><br>(Not Subject to Mandatory Arbitration)<br>(Demand for Jury Trial)<br><br>Fee Authority: ORS 21.160(1)(d)<br>Amount in Controversy: $1,097,350.18. |

Plaintiff alleges:

1.

At all relevant and material times herein:

a) Plaintiff Alicia Lintner is the duly appointed and acting Personal Representative for the Estate of Debbie Lee Dalton, deceased, pursuant to a Limited Judgment dated March 3, 2020, entered in the Circuit Court of the State of Oregon for the County of Marion, Probate Department Case No. 20PB01596;

b) Plaintiff's decedent Debbie Lee Dalton was survived by Richard Dean Dalton, husband, Michelle Gomez, daughter, and Alicia Lintner, daughter;

Page 1 – COMPLAINT

**PICKETT DUMMIGAN MCCALL LLP**
Centennial Block, Fourth Floor
210 SW Morrison St.
Portland, OR 97204
(503) 223-7770

1  c) Defendant Walmart Inc. dba Walmart #1784 ("WALMART") was a duly organized foreign business corporation, authorized to do business and doing business in the state of Oregon as a multinational retailer owning and operating a chain of supercenters, discount department stores, and grocery stores, including dozens of locations in the state of Oregon, and maintaining a principal place of business in the city of Bentonville, county of Benton, state of Arkansas;

d) Defendant Walmart owned and operated approximately 5,360 retail stores in the United States, including approximately 3,570 Supercenters, which average 182,000 square feet each, selling a variety of groceries, produce, baked goods, delicatessen items, dairy products, electronics, apparel, toys and home furnishings, including a Supercenter located at 4200 S.E. 82nd Avenue, located in the City of Portland, County of Multnomah, State of Oregon, thereby carrying on regular and sustained business activity in Multnomah County;

e) Defendant Walmart owned, controlled, leased, and/or operated retail business property located at 3025 Lancaster Drive NE, city of Salem, county of Marion, state of Oregon (hereinafter referred to as the "SALEM STORE").

2.

On or about October 12, 2018, plaintiff's decedent Debbie Lee Dalton, ("PLAINTIFF'S DECEDENT" or "MS. DALTON") was a 61-year-old business patron at the above-described Salem Store. Defendant Walmart owned, maintained, and/or controlled the Salem Store, including all store-supplied assistive devices therein, such as store wheelchairs which are intended for the use of its patrons while shopping.

3.

On October 12, 2018, Ms. Dalton arrived at defendant Walmart's Salem Store in a van. Ms. Dalton was accompanied by her grandson and two family friends who often assist Ms. Dalton while she shops. Ms. Dalton suffered from COPD, was on full-time supplemental oxygen, and had recently been hospitalized due to swelling in her legs. Because of her health conditions, Ms. Dalton required the use of a wheelchair while shopping.

///
///
///

Page 2 – COMPLAINT

**PICKETT DUMMIGAN MCCALL** LLP
Centennial Block, Fourth Floor
210 SW Morrison St.
Portland, OR 97204
(503) 223-7770

Exhibit B, Page 2 of 9

4.

Ms. Dalton asked her grandson to go into the store and get a store-provided "wheelchair cart" and to bring it back to the van. Ms. Dalton's grandson went inside the Salem Store and asked the greeter at the front of the store if there were any wheelchairs available. The Walmart greeter said yes, and pointed Ms. Dalton's grandson to a nearby wheelchair, which appeared to be the only one remaining.

5.

The single remaining wheelchair was a "Sit & Shop" wheelchair that had a shopping basket in the front and between the arm rests that could be pulled up to allow the user to access the seat.

6.

Ms. Dalton's grandson retrieved the "Sit & Shop" wheelchair, pushed the chair outside, and placed it just outside the passenger door of the van where Ms. Dalton was sitting. Ms. Dalton's grandson had helped Ms. Dalton get in and out of wheelchairs many times before, and knew that because of Ms. Dalton's health conditions, the wheelchair needed to be stable while she transferred to the seat.

7.

Ms. Dalton's grandson engaged the wheel brakes so the wheelchair would be stable and would not roll backwards. Ms. Dalton exited the van and, with the basket of the wheelchair pulled up, she leaned on the wheelchair to transfer herself into the seat. However, the moment Ms. Dalton sat in the seat, the wheelchair collapsed. Ms. Dalton fell onto to the parking lot pavement and her leg split open. The wheelchair shopping basket tumbled down over her scraping and cutting her arms and legs. The wheelchair collapse caused Ms. Dalton to suffer multiple injuries, including several large skin tears and muscle-deep lacerations on her arms and legs, as described in more detail below.

///

///

Page 3 – COMPLAINT

**PICKETT DUMMIGAN MCCALL LLP**
Centennial Block, Fourth Floor
210 SW Morrison St.
Portland, OR 97204
(503) 223-7770

Exhibit B, Page 3 of 9

8.

An off-duty nurse who happened to be nearby came to Ms. Dalton's assistance. Ms. Dalton was bleeding profusely from her wounds and her grandson and family friends were scrambling to find some towels in the van to stop the bleeding. 9-1-1 was called and an ambulance arrived on the scene.

9.

After the ambulance arrived, several Walmart employees came out of the Salem Store to observe what was happening, but none of them interacted with the Dalton group. Ms. Dalton's grandson watched the employees; one employee appeared to be angry, admonishing the others for allowing customers to use a "faulty cart." Daniel Hart, the driver of the van, saw one employee saying emphatically to another that the wheelchair "shouldn't have been out on the floor." Mr. Hart got the impression that the Walmart employees may have known the wheelchair was not working correctly. Ms. Dalton was transported by ambulance from the Salem Store to the emergency department at Salem Hospital where she was treated for the skin tears and lacerations she sustained during the fall.

10.

Within a few hours after the fall, Richard Dalton, Ms. Dalton's husband, went to the Salem Store and asked an employee about Ms. Dalton's incident. One employee denied that any incident had happened that day. Mr. Dalton then asked to speak to a Person in Charge (PIC), and when the PIC arrived, Mr. Dalton explained that he knew there had been an accident because it was his wife who got hurt. Mr. Dalton, the PIC, and an employee who was at the store at the time of the incident went to an office in the Salem Store to review security camera footage from earlier in the day.

///
///
///
///

Page 4 – COMPLAINT

**PICKETT DUMMIGAN MCCALL** LLP
Centennial Block, Fourth Floor
210 SW Morrison St.
Portland, OR 97204
(503) 223-7770

Exhibit B, Page 4 of 9

1  11.

2  The PIC and the Walmart employee did not invite Mr. Dalton into the office, so Mr. Dalton
3  watched the video playback while looking in from the doorway. Initially, the employees said the
4  video did not show anything, but when Mr. Dalton saw an ambulance appear on the screen, he asked
5  the employees to back up the video. The Walmart employees backed up the video and eventually
6  the three of them watched the wheelchair collapse on Ms. Dalton.

7  12.

8  The PIC and the Walmart employee backed up the video further and saw Ms. Dalton's
9  grandson enter the Salem Store and later emerge with the "Sit & Shop" wheelchair. The Walmart
10 employee asked the PIC whether the Salem Store had wheelchairs like the one in the video, and the
11 PIC responded yes.

12 13.

13 After Mr. Dalton, the PIC, and the Walmart employee finished watching the security
14 footage, they went to the store floor and saw the wheelchair that Ms. Dalton used earlier in the day
15 still on the floor. They pulled the wheelchair out and unfolded it. When Mr. Dalton placed weight
16 on one side of the chair, the wheelchair collapsed. Mr. Dalton explained that wheelchairs are
17 designed for handicapped people who are a vulnerable population that cannot always control their
18 body movements or balance when transferring to the wheelchair. The Walmart employee then
19 instructed the PIC to remove the wheelchair from the floor because it was dangerous.

20 14.

21 The following day, Mr. Dalton returned to the Salem Store to see if the "Sit & Shop"
22 wheelchair was still on the floor. When he arrived, he saw the wheelchair in the same place he had
23 seen it the day before. Mr. Dalton went to the Salem Store again the following day, and again saw
24 the wheelchair on the floor, along with another wheelchair that appeared to be the same "Sit &
25 Shop"-style by another entrance of the store.

26 ///

Page 5 – COMPLAINT

**PICKETT DUMMIGAN MCCALL** LLP
Centennial Block, Fourth Floor
210 SW Morrison St.
Portland, OR 97204
(503) 223-7770

Exhibit B, Page 5 of 9

15.

From October 12, 2018 through January 7, 2020, Ms. Dalton suffered complications from recurring wound infections, and ultimately died from endocarditis on January 7, 2020.

16.

Defendant Walmart had a duty to exercise reasonable care to make the Salem Store premises reasonably safe for its patrons, including plaintiff's decedent Dalton. This duty includes the obligation to inspect for and warn patrons of latent dangers on the Salem Store premises that were known, or in the exercise of reasonable care should have been known, to defendant Walmart, and to take reasonable action to protect patrons from the foreseeable and unreasonable risk of harm and/or to eliminate said unreasonably dangerous conditions.

17.

Defendant Walmart, by and through its employees or agents, working in the course and scope of their employment at the Salem Store, were responsible for reasonably inspecting, maintaining, and/or verifying for safety the Walmart store-supplied wheelchairs before the wheelchairs were provided to patrons for use while shopping.

18.

Defendant Walmart knew, had reason to know, and/or in the exercise of reasonable care should have known that the potentially hazardous store-supplied wheelchairs, which are used by patrons to shop, including patrons who are a part of a vulnerable population, could collapse and create an unreasonable risk of harm to patrons.

19.

Defendant Walmart did not warn patrons, including Ms. Dalton, of the danger associated with using a store-supplied wheelchair or that the wheelchair could collapse. There were no safety cones or warning signs at or near the store wheelchairs, or where Ms. Dalton fell, advising patrons of potentially hazardous risk of collapse while transferring to and/or using a store-supplied wheelchair.

Page 6 – COMPLAINT

**PICKETT DUMMIGAN MCCALL** LLP
Centennial Block, Fourth Floor
210 SW Morrison St.
Portland, OR 97204
(503) 223-7770

Exhibit B, Page 6 of 9

20.

Defendant Walmart, acting independently and/or by and through its employees or agents, was negligent and/or breached its duty of care in one or more of the following ways which led to the injuries of plaintiff's decedent:

a) In failing to exercise reasonable care to inspect and order the removal of potentially hazardous wheelchairs in the Salem Store, which are intended to be used by patrons to shop;

b) In failing to conduct periodic inspections of the wheelchairs in the Salem Store, which are intended to be used by patrons to shop, to determine whether or not any potentially hazardous conditions existed related to the use of the wheelchairs;

c) In failing to remove the potentially hazardous wheelchair that Ms. Dalton used on the date of her fall;

d) In failing to maintain reasonably safe premises, specifically in inspecting, maintaining, testing, or verifying the safety of store-supplied wheelchairs, which patrons use to shop, thereby creating an unreasonably dangerous and reasonably foreseeable risk of harm, at a time when defendant knew, or, in the exercise of reasonable care, should have known, about said hazardous condition;

e) In failing to warn customers in general, and Ms. Dalton in particular, of the dangerous condition on the premises at a time when defendant knew, or, in the exercise of reasonable care should have known, of the presence of the unreasonably dangerous and reasonably foreseeable risk of harm created by the hazard;

f) In failing to post adequate instructions near where the wheelchairs are stored, or prominently displayed as a decal on wheelchairs themselves, in the Salem Store, regarding safe use of such wheelchairs, which are intended to be used by patrons to shop;

g) In failing to carry out reasonable inspections of the premises in order to discover unreasonably dangerous conditions, which reasonable inspections would have revealed the presence of said dangerous conditions;

h) In failing to adequately train and/or instruct employees to inspect for and/or recognize the unreasonably dangerous condition presented by the store-supplied wheelchairs and/or to verify the safety of the wheelchairs, which patrons use to shop.

///

///

Page 7 – COMPLAINT

**PICKETT DUMMIGAN MCCALL** LLP
Centennial Block, Fourth Floor
210 SW Morrison St.
Portland, OR 97204
(503) 223-7770

Exhibit B, Page 7 of 9

21.

The negligence and/or fault of defendant Walmart, in one or more of the ways set forth above, was a substantial factor in causing, contributing to, aggravating, and/or exacerbating the following injuries to plaintiff's decedent:

a) 5 cm laceration to the right forearm;
b) 2 cm by 3 cm skin tear to the right upper arm;
c) 6 cm by 3cm laceration to the left forearm;
d) 6 cm wide by 10cm long laceration to the left knee;
e) Hematoma of the left lower abdomen;
f) Hemorrhage of the left lower abdomen;
g) Abdominal wall abscess;
h) Abdominal pain;
i) Exposed fat tissue;
j) Bleeding;
k) Multiple wound infections.

22.

As a result of the aforementioned injuries, plaintiff's decedent underwent the following medical and surgical procedures:

a) Laceration repair of the right forearm;
b) Laceration repair of the left forearm;
c) Lower left quadrant abdomen abscess debridement.

23.

The fault and/or negligence of defendant, in one or more of the particulars set forth herein, caused plaintiff's decedent to incur disability, pain, and suffering during the period between the time of her fall and the time of her death, thereby entitling the estate to an award of noneconomic damages in the sum of $1,000,000.00.

Page 8 – COMPLAINT

**PICKETT DUMMIGAN MCCALL** LLP
Centennial Block, Fourth Floor
210 SW Morrison St.
Portland, OR 97204
(503) 223-7770

24.

In addition, the fault and/or negligence of defendant, in one or more of the particulars set forth herein, caused plaintiff's decedent to incur reasonable and necessary medical, hospital, ambulance, and related expenses between the time of her injury and the time of her death in the sum of $97,350.18, thereby entitling the estate to an award of economic damages in that amount.

25.

Plaintiff reserves the right to amend this Complaint to seek punitive damages.

26.

Plaintiff reserves the right to amend this Complaint at the time of trial to more completely allege economic losses, including medical expenses, and/or to conform to proof offered at trial.

27.

Plaintiff hereby demands a jury trial.

WHEREFORE plaintiff prays for judgment against defendant as follows:

(a) Non-economic damages of $1,000,000.00;

(b) Economic damages in the following amounts:

    a. Past medical expenses of $97,350.18;

(c) Reasonable attorney fees pursuant to ORS 30.075;

(d) For pre-judgment interest at the legal rate of 9% per annum for her economically verifiable losses from the date of loss to the date of entry of judgment herein; and

(e) For such other relief as the court deems just and equitable.

DATED this 1st day of July, 2021.

    s/R. Brendan Dummigan
    R. Brendan Dummigan, OSB #932588
    brendan@pdm.legal
    Kyle T. Sharp, OSB #204886
    kyle@pdm.legal
    PICKETT DUMMIGAN MCCALL LLP

    *of Attorneys for Plaintiff*

Page 9 – COMPLAINT

PICKETT DUMMIGAN MCCALL LLP
Centennial Block, Fourth Floor
210 SW Morrison St.
Portland, OR 97204
(503) 223-7770

Exhibit B, Page 9 of 9